1  **WO**

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  American Realty Capital Properties                    No. CV-14-00673-PHX-DGC
   Incorporated,
10                                                        **ORDER**
                          Plaintiff,
11
   v.
12
   Jeffrey C. Holland, et al.,
13
                          Defendants.
14

15

16          Defendants Jeffery C. Holland ("Holland") and The Carlyle Group, LP ("Carlyle")

17  have moved for an award of attorneys' fees pursuant to Federal Rule of Civil Procedure

18  54(d)(2) and Local Rule 54.2(b).  Doc. 28.  The motion is fully briefed.  The Court will

19  grant the motion in part and award $46,140 in attorneys' fees.[1]

20  **I.      Background.**

21          **A.      The Complaint and Underlying Dispute.**

22          In its complaint, Plaintiff American Realty Capital Properties Incorporated

23  ("ARCP") alleged that from December 2010 until February 5, 2014, Holland was

24  employed as a senior executive with Cole Real Estate Investments, Inc. ("Cole").  Doc. 1,

25  ¶ 21.  Holland's primary responsibility at Cole was to build a "distribution network" for

26  shares in real estate investment trusts sponsored and managed by Cole.  *Id*., ¶¶ 21-22.  On

27  _____

28          [1] The request for oral argument is denied because the issues have been fully
    briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b);
    *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

February 7, 2014, Cole was acquired by ARCP.  *Id*., ¶ 19.  At that time, Holland represented to ARCP that he had decided to "take some time off" rather than join ARCP and had no intention of joining another company in the foreseeable future.  *Id*., ¶ 32. Holland thereby induced ARCP to treat his departure as a termination without cause in the wake of a change of control, which entitled him to $5.4 million in severance pay.  *Id*. ARCP also signed a written Consulting/Covenants Agreement with Holland, which ARCP alleged in its complaint was governed by Arizona law, pursuant to which Holland agreed to serve as a part-time consultant for six months for an additional $100,000.  *Id*., ¶¶ 32-34.

As a condition of Holland's employment at Cole, he was required to execute a written Employment Agreement containing two restrictive covenants.  *Id*., ¶ 27.  First, Holland agreed that he would not solicit any of the financial advisors whose clients had invested in Cole or ARCP funds for 12 months after terminating his employment.  *Id*. Second, Holland committed not to use or disclose any confidential information he learned through his relationship with Cole and ARCP.  *Id*.

In January 2014, ARCP received word that Holland had joined Carlyle as a senior executive with duties substantially identical to the duties he had performed at Cole.  *Id*., ¶¶ 37-40.  ARCP alleged that "given the breadth of distribution networks of ARCP and Cole, Holland will inevitably exploit both the goodwill that he developed with independent financial advisors across the country at ARCP's expense, and Confidential Information about which independent financial advisory firms, and which individual financial advisors, are most likely to sell 'alternative investments' such as those offered by ARCP or Carlyle."  Doc. 1 at 3.

ARCP instituted this action on April 1, 2014 asserting three claims, including breach of contract (*id.*, ¶¶ 47-52), tortious interference with contractual relations (*id.*, ¶¶ 53-57), and fraud in the inducement (*id.*, ¶¶ 58-63).

**B.    The Application for TRO and Aftermath.**

On April 2, 2014, ARCP moved for entry of a four-pronged TRO that enjoined

(1) Holland from soliciting any investors in ARCP or any of the funds that it manages, (2) Holland from using or disclosing any "Confidential Information" as defined in the June 18, 2013 Employment Agreement between Holland and Cole and in the February 7, 2014 Consulting/Covenants Agreement between Holland and ARCP, (3) Carlyle from tortiously interfering with Holland's contract with ARCP, and (4) Carlyle from using or disclosing any of ARCP or Cole's Confidential Information as the term is defined in Holland's employment contracts.  Doc. 9.

On April 3, 2013, the Court entered a minute entry refusing to enter a TRO without notice and directing ARCP to notify Defendants of the TRO hearing that was re-scheduled for April 8, 2014.  Doc. 12.  On April 7, 2013, Defendants filed their opposition to ARCP's motion for a TRO.  Doc. 16.  On April 8, 2013, both parties appeared at a TRO hearing.  Doc. 22.  The Court entered an order denying the TRO, finding that ARCP had not shown that it was likely to succeed on the merits.  Doc. 23.  The Court reasoned that the non-solicitation and confidentiality provisions in the Employment Agreement and Consulting/Covenants Agreement were unreasonably broad and unenforceable.  Doc. 23 at 2.

ARCP voluntarily dismissed the case two days after the Court entered its order denying ARCP's motion for a TRO.  Doc. 24.

## II.    Legal Standard.

Pursuant to Local Rule 54.2(b), a party seeking to recover attorney fees must file and serve a motion and a supporting memorandum of points and authorities "within fourteen (14) days of the entry of judgment."  LRCiv 54.2(b)(2).[2]  Pursuant to Rule 54.2(c), the supporting memorandum "shall include a discussion of the following matters with appropriate headings and in the [following] order: (1) Eligibility[;] (2) Entitlement[;] [and] (3) Reasonableness of Requested Award."  LRCiv 54.2(c)(1)-(3).   Local rule

---

[2] Any responsive or reply memoranda must be filed "in accordance with the deadlines set forth in Rule 7.2[.]" LRCiv 54.2(b)(3).  "The responsive memorandum . . . shall identify with specificity all disputed issues of material fact and shall separately identify each and every disputed time entry or expense item.  The respondent may attach controverting affidavits."  LRCiv 54.2(f).

54.2(c) sets forth in detail the issues, factors, and legal authority that must be addressed in the memorandum's separate Eligibility and Entitlement sections.  LRCiv 54.2(c)(1)-(2). The memorandum's separate Reasonableness of Requested Award section "should discuss, as appropriate, the various factors bearing on the reasonableness of the requested attorneys' fees award, including, but not limited to," the thirteen factors listed in Rule 54.2(c)(3)(A)-(M).

**III.    Analysis.**

Defendants seek an award of attorneys' fees in the amount of $134,182.  Doc. 28 at 2.  ARCP argues that Defendants are not eligible or entitled to an award of attorneys' fees and that, even if they were, the requested award is not reasonable.  Doc. 31.

**A.    Eligibility.**

Defendants are eligible to recover attorneys' fees pursuant to A.R.S. § 12-341.01, which provides that the court may award the successful party reasonable attorneys' fees in any contested action arising out of contract.  A.R.S. § 12-34.01(A).

ARCP argues that A.R.S. § 12-341.01 does not apply to claims arising out of the Employment Agreement, which is governed by Maryland law.  Doc. 31 at 8; *see Aspect Sys., Inc. v. Lam Research Corp.*, No. CV 06-1620-PHX-NVW, 2009 WL 1390837, at *12 (D. Ariz. May 14, 2009) (holding that because the parties' agreement contained choice-of-law provisions applying California law, attorneys' fees may not be awarded under A.R.S. § 12-341.01).  Because Defendants have failed to differentiate between fees incurred in defense of claims arising out of the Employment Agreement as opposed to those arising out of the Consulting/Covenants Agreement, ARCP asserts that Defendants are not entitled to any attorneys' fees.  Doc. 31 at 10.

Defendants respond that while A.R.S. § 12-341.01 does not entitle them to fees for work performed to defend against claims arising out of the Employment Agreement, "ARCP has no basis to demand that Defendants retrospectively deconstruct their legal work as if the case were neatly severable into Arizona and Maryland claims."  Doc. 38 at 2.  Because each of ARCP's claims relied on both contracts, the Court concludes that the

Arizona- and Maryland-law claims were "inextricably interwoven" and "overlapping," and Defendants are therefore eligible to recover fees for all of their work. *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 212 P.3d 853, 860 & n.10 (Ariz. Ct. App. 2009).

ARCP also argues that Defendants are not prevailing parties because ARCP dismissed this case without prejudice and immediately thereafter initiated a substantially identical case in New York. Doc. 31 at 10. ARCP argues that while Defendants "avoided temporary injunctive relief without discovery, there has been no final resolution of the dispute." *Id*. "To determine whether a party is successful under Section 12-34.01, a court should consider the totality of the circumstances and the relative success of the litigants." *Med. Prot. Co. v. Pang*, 740 F.3d 1279, 1283 (9th Cir. 2013). Doing so, the Court finds that Defendants are prevailing parties. Defendants secured a ruling that the contract provisions are likely unenforceable and successfully opposed the TRO motion that had been filed against them. Doc. 23. The fact that ARCP then dismissed this case without prejudice does not change these facts. *C.f. Britt v. Steffen*, 205 P.3d 357, 359 (Ariz. Ct. App. 2008) ("When [a contract] action has been dismissed without prejudice, the defendant is still considered a 'successful party' for purposes of A.R.S. § 12-341.01(A) even though such dismissal does not operate as an adjudication upon the merits.").

**B.   Entitlement.**

In determining whether a successful party is entitled to recover fees under § 12-341.01, Arizona courts consider: (1) the merits of the unsuccessful party's claim; (2) whether the claim could have been avoided or settled; (3) whether the successful party's efforts were completely superfluous in achieving the result; (4) whether assessing fees against the unsuccessful party would cause extreme hardship; (5) whether the successful party did not prevail with respect to all of the relief sought; (6) the novelty of the legal question presented; and (7) whether an award to the prevailing party would discourage other parties with tenable claims from litigating legitimate contract issues for fear of incurring liability for attorneys' fees. *Fulton Homes Corp. v. BBP Concrete*, 155

1    P.3d 1090, 1093 (Ariz. Ct. App. 2007) (citing *Associated Indem. Corp. v. Warner*, 694

2    P.2d 1181, 1184 (Ariz. 1985) (en banc)).   ARCP does not contest Defendants' assertion

3    that the third, fourth, and seventh factors support the requested award.  It does argue,

4    however, that the other factors are the most relevant factors and do not support the

5    request.  Doc. 31 at 11.

6         ARCP argues that the first factor does not favor an award because "ARCP's

7    claims were made in good faith based on two agreements between highly sophisticated

8    parties."  Doc. 31 at 11.  But the first factor does not ask whether ARCP had a good faith

9    basis for its claim.  Such a basis is a prerequisite to any claim in federal court.  Fed. R.

10   Civ. P. 11(b) & (c).  In its order denying the TRO, the Court found that ARCP was not

11   likely to succeed on the merits because the agreements contained unreasonably broad

12   non-solicitation and confidentiality provisions.  Doc. 23 at 3.  The first factor favors an

13   award of attorneys' fees.

14        ARCP asserts that the second factor does not favor an award because Defendants'

15   conduct prevented the possibility of settlement or other accommodations.  Doc. 31 at 11.

16   The relevant conduct to which ARCP refers includes Defendants' failure to respond

17   within a week to ARCP's letters that Defendants not breach the employment contracts,

18   and Defendants' refusal to discuss "substantive resolution or exploring the possibility of

19   mutually beneficial accommodations" two days before the TRO hearing.  *Id*. at 11-12.

20   The Court cannot agree.  ARCP filed a lawsuit and sought an *ex parte* TRO within a

21   week of sending the demand letters to Holland and Carlyle.  Defendants' counsel advised

22   ARCP on April 6, 2014 that Carlyle had been and remained prepared to discuss the issues

23   on a principal-to-principal basis, but ARCP declined to participate in such discussions.

24   Doc. 38 at 5.  The second factor favors an award of attorneys' fees.

25        ARCP argues that the fifth factor does not favor an award because Defendants did

26   not achieve a total dismissal of the underlying action and the dispute has been effectively

27   transferred to New York state court.  Doc. 31 at 12.  The Court disagrees.  Defendants

28   successfully defeated all relief that was sought in this case.  The fact that ARCP chose to

1    dismiss the claim and pursue further relief elsewhere does not change this fact.

2        ARCP asserts that the sixth factor does not favor an award because this litigation

3    involved breach of contract and tort claims that did not force Defendants to "deal with

4    any esoteric or novel areas of law," and that "the claims in this case were governed by

5    well-developed law in Maryland and Arizona on restrictive covenants."  Doc. 31 at 12.

6    The Court agrees that the underlying law governing restrictive covenants is well-

7    developed and that it appeared, given the facts of this case, that ARCP's claims were

8    unlikely to succeed.  But Defendants nonetheless were required to respond to a TRO

9    motion on short notice, and to appear and defend against ARCP's claims at the TRO

10   hearing.  These tasks require able counsel.  The Court concludes that the sixth factor is

11   neutral.

12       Six out of seven relevant factors favor an award of attorneys' fees.  Defendants

13   therefore are entitled to recover fees under A.R.S. § 12-341.01.

14       **C.    Reasonableness of Requested Award.**

15       Defendants seek a total of $134,182 in attorneys' fees for five days' work.  The

16   Court understands the urgency of responding to the TRO petition and the high stakes in

17   retaining Mr. Holland as a Carlyle executive, but cannot conclude that this fee request is

18   reasonable.

19       Responding to the TRO motion in Arizona required quick mobilization by able

20   lawyers, but the Court cannot agree that four lawyers, each billing ten or more hours most

21   days, were needed.  As already noted, the legal and factual issues in this case were not

22   particularly complicated.  The restrictive covenant case law of Arizona and Maryland

23   was clear.  And the papers prepared by these four lawyers in opposition to the TRO

24   totaled less than 20 pages.  The Court will award fees for the work of two defense

25   attorneys – a partner and an experienced associate.

26       The Court also finds that the hourly rates charged by defense counsel are too high

27   for this district.  The requested rates range from $440 per hour for the most junior

28   associate to $830 per hour for the most senior partner.  These rates are higher than typical

1    rates charged by able lawyers in this district.  Based on its experience, the Court

2    concludes that $600 per hour is reasonable for an experienced and effective partner and

3    that $300 per hour is reasonable for a seasoned associate.

4            The defense attorneys also engaged in "block billing," a practice which lumps

5    together all tasks performed over the course of a day in one billing entry.  A reviewing

6    court (or client) cannot determine from such entries how much time was devoted to any

7    particular task and therefore cannot determine whether the time recorded was reasonable.

8    As a result, this Court's local rules do not permit fee applications that include block

9    billing.  They instead require lawyers to identify "[t]he time devoted to each individual

10   unrelated task[.]"  *See* LRCiv. 54.2(d) & (e).  Rather than deny the fee request entirely on

11   this basis, however, the Court concludes that reducing the fee award to two attorneys and

12   reasonable Phoenix rates will arrive at a reasonable fee despite the fact that the Court

13   cannot evaluate individual time entries for reasonableness.

14           The Court will award fees for the time invested in this case by the most senior

15   partner and the mid-level associate, Mr. Van Kirk and Mr. Blumenstein.  The Court will

16   award hourly rates for their time of $600 and $300 respectively.  This results in a fee

17   award of $49,740.  Defense counsel reduced their fee request for $8,790 for travel time,

18   explaining that this represented 6 hours or travel time for Mr. Van Kirk and six hours for

19   Mr. Wilson.  Doc. 28-1 at 9 n.1.  Because the Court is awarding time only for Mr. Van

20   Kirk and Mr. Blumenstein, it will reduce the award by 6 hours of travel time ($3,600) for

21   Mr. Van Kirk.  This results in a total fee award of $46,140, which the Court views as

22   reasonable for the work performed.

23           **IT IS ORDERED**:

24           1.      Defendants motion for attorneys' fees (Doc. 28) is **granted in part** and

25                   **denied in part**.

26

27

28

2.      Defendants are awarded attorneys' fees in the amount of **$46,140**.

Dated this 24th day of July, 2014.

_____
David G. Campbell
United States District Judge